The docket is 5-19, page 373. Council ready to proceed. It's Andrews v. Andrews. May it please the court, counsel. Your Honor, we're here today on my appeal of my client's judgment of dissolution of marriage and amended judgment of dissolution of marriage and judgment allocating parental rights. The facts of the case is that back in 2018 a divorce was filed by my client, and I represent the wife, the petitioner. That was filed in August of 2018. In February of 2019, the respondent, the husband, filed his answer response and also a financial affidavit, which becomes important in the case, a financial affidavit. And then later, there's a trial that takes place over two days, March 1st and 2nd or May 1st and 2nd of 2019. And in that trial, there were a number of exhibits submitted and stipulated to their admission. And thereafter, I got involved in the case. I don't know if the court was aware, but I came on board after my client came to be asking me for guidance as to the ruling and what she should do. In particular, in that ruling, there was property awarded to her husband, the mobile home, which she had all the stuff in her name, and she was wanting to know whether she had to keep paying that or not, what have you. And as a part of that investigation of getting that dissolution, she became aware of what she said she wasn't aware of earlier, that she was an owner of real estate on which the mobile home was placed. So I set about to review the transcript, order the transcript, and set about to review to see what was said about real estate. And that's where I discovered that in the financial affidavit, the husband had disclosed that the parties jointly owned real estate that he valued at $130,000. There was not in the judgments that were in it, there was nothing ever said about real estate, but there was something said about mobile home. There was a mobile home that was, I don't know if the record reflects it, but it came up in the post-trial motions in the affidavit. The pleadings at the time they married, her husband did not have some ground. But while they were married, some relation to her husband deeded to the two of them jointly some ground on which they placed this mobile home in. Because she had steady income, she had gone and got a loan in her name and borrowed $60,000 that was paid down to approximately $45,000 at the time of trial. And at trial, the debt of $45,000 was established and allocated between the parties because they had announced a 50-50 division of property. Mr. Hanson, looking at the file, it looks like there was no transcript of day two. There was not a transcript of day two. Can you explain why there was no transcript? I cannot. I was not involved in the case. Isn't that a problem for the appellant? Well, it would be if the court says it was. But the judge said a lot about what he considered and what he was aware of in his transcript. And that's why I'm pointing these things out to Your Honors, because in the argument, we had a very long argument about what he was considering. And I actually, in my brief to assist the court, I tried to draw attention to these particular things that I believe that the judge said that indicated the basis for his ruling. He said several times in there that he thought it was stipulated to. But when you go back and look at the transcript, the judge says we're stipulating to the admission of exhibits, various exhibits. None of those exhibits said real estate anywhere on them. But wasn't there a statement to the court by the parties that there were only certain issues at issue? There was. And the division of real estate was not one of them? I don't recall anybody ever saying real estate ever, but I do recall that there was a – I don't recall. I basically say there was an admission made in the filing of the financial affidavit that put it in play, that there was real estate existing. And if we're stipulating one thing, you know, I'm suggesting that we have to deal with all things that are stipulated to. And it was stipulated to in the financial affidavit it was real estate jointly owned worth $130,000 that wasn't dealt with. I believe a reasonable inference from – if Your Honors – I know you have a lot before you, but I tried to pull out those quotes in there where Judge Neubauer talked about what, you know, what he heard and what he decided. And he basically said a couple times, well, it was stipulated to. But when you go back and you look at the stipulations, it doesn't say real estate anywhere. And what is apparent from this, from my preview as a post-trial looking at it, trying to look at the record and try to establish, is real estate was omitted. Now, we're in the advocacy situation here, so I understand that if one client doesn't present evidence on it, they can't be unhappy about it. But there was evidence submitted by stipulation as to real estate jointly owned at a value of $130,000, and it wasn't dealt with. I was under the impression that was the mobile home. Was there just a stipulation as to the value of the mobile home? There was not a stipulation. Well, there was an admission of exhibit. It was agreed to, so I guess you would call that a stipulation. What ended up happening is kind of unique here is that in March of 2019, there is a hearing where counsel suggests that she's not gotten discovery from my client. And a written order is prepared by counsel asking for certain things, including the value of the mobile home. Not the value of the real estate, the value of the mobile home, because my client believed that she did not know that she owned real estate. She knew that the mobile home was sitting on real estate that she believed was owned by her husband. And that isn't a fact that we have to deal with, but I brought this matter to the attention of the court at a time when the court couldn't address it, and the court basically stated several places that he believed it had been stipulated to. And that's – there's no mentioning of the word real estate. Now, there are arguments one could imply. Does real estate – does mobile home mean real estate? There was no testimony about that, and there's also – there was no evidence put on by anybody that the court pointed out in his review of his notes and his response to our arguments that anything had been said other than he saw Miss Beavis, my client's mother, a real estate person, testify. And I think he said, I thought she was talking about real estate. Well, see, I guess in most cases they're saying he gets – she gets the house. Well, I assume that he's not going to get the yard. No, but there's nothing in there that says he gets the house. It's just these documents, you know, and then what the judge said he thought. He says – and I pointed that to the court. I said, well, her valuation was – it says right on there mobile home only. Does it say only? Yeah, on the exhibit, her valuation is for mobile home only, $21,000, $22,000 or whatever the case may be. That – the other thing that's unique is that counsel only asked for the value of the mobile home. You know, I made an argument to the judges a lot about if everybody was aware of this. Counsel in her statement to the court says that my client had agreed to it or, in other words, stipulated to it somewhere, but there's nothing in the record that says that this issue was ever brought up and discussed. And because of the enormous nature of the issue, we're talking about $130,000 with a $45,000 debt versus $20,000 with a $45,000 debt. They got allocated equally. Is there anything in the record that substantiates this allegation? I saw, I believe, in the Respondent – Petitioner's – Respondent's brief about an agreement between the two parties that the wife would forego any claim to the interest in real estate. Well, the only thing I saw, Your Honor, was the statement by counsel that my client supposedly had told her client something. That was in the post-trial argument motion. But Judge Neubauer never mentioned that that was stated in any kind of proceeding by way of testimony. And when you make this suggestion, maybe something was said. There's no bystander's report that's been submitted that says that those things were said. And when I was reviewing, I was saying, well, maybe this was talked about. And if it is, then that's part of the record and that stands. But it almost – there's actually a statement by counsel where she states, well, when they got the valuation by Ms. Vivas of the $21,000, they accepted it. Nobody – you wouldn't expect us to pay more. But they asked for that valuation. Now, the counsel asked for the mobile home. Didn't ask for the real estate and the mobile home. Didn't ask for the marital residence, which many times on divorce, we'll say they're awarded the marital residence and that many times is inclusive of the real estate. But here we have 20 some odd or whatever it was, the acres I mentioned in my briefs, the number of acres that caused this to be worth $130,000. Because the original loan for this manufactured home that was put on the property, arguably an issue that wasn't taken up with any contribution to the value of the land by having a home on it versus a home that's picked up and moved off from it. And my experience with that has been a mobile home that's sitting somewhere and hooked up is worth a lot more than it's worth if it's just being picked up and moved out. Particularly if double whites would have to be redone. If it's a fixture, does it become real estate? Does a fixture become real estate? The mobile home would become real estate as a part of real estate if real estate had been discussed or ordered by the court specifically, which takes me to Part 2, Your Honor, if I could. Not Part 2, but a further argument. So I go in and point this out to the judge, and the judge basically says, I thought it was fair. I believe the inference to believe is that's what he believed. Whether he thought or believed it based on the record of property, I believe that that's for this court to review and decide. That he believed that it had been stipulated to. Ultimately what he did, because one of my arguments was, your client is still on the hook for this loan. Still on the hook for this loan on property that's been awarded elsewhere. So he ordered her to execute a quick claim deed, not just to the mobile home, but to the property. Well, that was the act of division. When this first part of this case was over, I submit, Your Honor, that a plain reading of the words used would be that they were still co-owners of the real estate because it hadn't been clarified. And there was no motion brought by counsel to clarify to include real estate or to suggest that. So you could have, theoretically, you could have partitioned it afterwards and saying, you know, to get that taken care of. But I was trying to address it head on by just saying, Judge, this was omitted. It's $130,000 versus nothing difference. The judge believed that he said some words, you're stuck with it. And I was trying to find out what exactly I was stuck with other than the fact that it was omitted. And if the underlying premise is to do equity between the parties, you know, it was my feeling that was an opportunity for the court to do equity. Now, if there's culpability involved or error involved in my client not presenting that argument because she didn't know, so be it. But it was brought to the attention of the court at a time it could have been fixed if the court chose to fix it and the court said that they believed it had been stipulated to. Well, stipulations can be reviewed, and they have to be clear. I mean, stipulations have to be clear. They can't be ambiguous. At a minimum, I submit, Your Honors, that this is an ambiguous stipulation between the mobile home and the real estate. But it's your call. That's why we're here, Your Honors. For those reasons, we would ask that you – oh, I'm sorry. I've got a couple more arguments. That was the big argument. That's the money argument, Judge. And I want you to know that I filed in my close trial motion several issues that I raised and Judge corrected several of those issues, at least to what I was asking for. For example, he had failed to allocate any amount of money to an amount set in a financial affidavit and adjusted that. He also – this was a case of shared support, and there was the parties. My client had children for more than 146 days or whatever it was, but they had entered an order that did not deal with shared support. And on re-hearing, the judge corrected that and entered that order, and then at the final hearing deviated from the guidelines based on that. But I raised in my appeal here that there was no sufficient evidence to show that my client was going to have to be out of town 12 days for the future. That's how close we were. We were within four days or two days of being shared. If it was a shared calculation, it would be substantially different than what it would be if it's not shared. And even with the deviation, it's a substantial greater amount that she would pay, but for a calculation based on shared. Well, as I recall, Mr. Hanson, there's a statement by you on the record where you advised her to not travel in order to benefit her child. Based on the judge's ruling, I was saying, well, if you can change your work schedule, then that will help you. That's true, though. It's accurate. But the reality was that – not the reality, but the facts is we believe they were presented – this was a job that was going to end at some point. She just didn't know when it was going to end because she worked in Mount Vernon and had to travel out of state to do something. And I said, well, you can quit going, you know, quit going to that if you can. But the judge found that there was reason to deviate and did. It was my belief that he should have applied the shared support calculation. And so for those reasons, Your Honors, we ask that you remand the case back and equitably divide the real estate. And then address the issue as to the shared support calculation. Thank you, Your Honor. Thank you, Justice. Appellee. Thank you. May it please the Court and Counsel. I represent Josh Andrews. He is an appellee in this case. Mr. Hanson made a statement. Would you give us your name? I'm sorry. It's recording. Sorry. Jim Merrill-Palazzi. I represent Josh Andrews, the appellee. Mr. Hanson made a statement that really caught my attention. And he said a lot of times when we are doing these divorce cases, we will reference the parties awarded the Merrill residence, not the real estate. We'll just say Merrill residence. Well, that certainly is the case. And here the Merrill residence happened to be a double wide. And that's what it was called. It was referenced as a double wide. The double wide, a loan had to be taken out against it. And when the loan was taken out, it was done with the bake of dicks. And the mortgage specifically references that the mobile home does become a structure and it is affixed to the real estate and it becomes part of the real estate. So it was a real estate mortgage? Yes. It was taken out against all the properties. Signed by both parties? Both parties' signatures are on the mortgage. It was maintained by Ms. Andrews that she was the only one on that mortgage. But both mortgages are actually part of the appendix. And both parties' names are on both of those. So I'm not disputing she might have not been the only one there. But my client's name is also on both mortgages because it had to be redone at some point. Now can you explain why there is no transcript for day two? The only explanation I can give you is when we got to court, Judge Neubauer said, I'm not going to have a reporter for you two today. If you want to proceed, you can. This had been delayed and delayed and delayed, and we wanted to get it done. I don't think anybody ever thought we would end up here, but we did, and that's why we did not have transcript. And there's no backstanders report? No. Okay. Basically, from what I can see from Mr. Hansen's brief is the whole case comes down to whether or not the real estate is addressed. We agree that the debt was allocated. Debt was allocated to my client. We agree that the mobile home was allocated to my client. So I think it comes down to whether real estate includes mobile homes. The Coles-Campbell case, which the Coles-Cumberland case, I apologize, that I cited actually defines real estate, and it defines it as real property as including all building structures and improvements and other permanent fixtures or whatever kind. Clearly, the double Y, it's a structure, and it's tied to the real estate. So I think we're coming to semantics of, well, was it called real estate? Was it called double Y? Was it called mobile home? We were referring to the marital residence where they lived on the property. What was the court's ruling as to the debt on the double Y? Actually, the court just approved the stipulation where both parties agreed my client was responsible for it. So he was awarded. He was awarded the debt, the entire debt. The double Y and then responsibility for the debt. That's correct. And Ms. Andrews says she only discovered that her name was actually on the deed when she went to go about getting her name off of that debt. Now, she also says that she was the only name on this mortgage, so she would have had to provide the deed to the bank that had her name on it, but how she says she only just found out after the case. Didn't she find out when she attempted to change the utilities, supposedly? She said that when she went to the bank to do the refinance. I would assume when you procured her a copy of the deed, which she would have had to provide them in the first place. Now, there was a stipulation of the parties, and it accepted the value in debt of what the parties submitted, and the value of the double Y, that was the value that the appellate provided. Now, where is that in the record, this stipulation you're talking about? There was an appraisal, for lack of a better word, done by her mother, real estate agent Ms. Bevis, and that value was actually an exhibit that was stipulated to. But wasn't that just a valuation of the double Y structure itself? And, in fact, didn't the valuation when it came back indicate double Y only? It did not include a valuation of the real estate. Well, that is true if you just look at the valuation that was given by Ms. Bevis, but if you look at her financial affidavit, where under the category real estate, she assesses that same value to what they're asking for real estate, and she gives the value that the court accepted. And on that same financial affidavit, it's the same debt that my client eventually became responsible for. So, I mean, in that same real estate portion of the financial affidavit, yes, my client valued it at $130,000, but it would not make any sense for us to argue that, make us take the higher value and pay you the equity. If you're willing to go with your value that's lower, we're going to accept it, and that's exactly what happened. When the stipulation was given to the court, we said all property issues had been dealt with, only dealing with kids here, and we went on. That's why no evidence was presented. And that's on the record in the first day? That's correct. So that would be a matter of record? That is a matter of record, absolutely. It was actually done before any testimony was presented. Was that your representation to the court on behalf of both parties representing the stipulation that had been entered into? Actually, Mr. Reeves first did the stipulation, and then I followed up and said, yes, that is correct, and then both parties agreed. So all four of us announced it on the record and agreed to it. Now, this came to the court's attention by way of a motion to reconsider. Now, in a motion to reconsider, we can address changes in the law, none were alleged, misapplication of the law, that was also not alleged. So we come down to newly discovered evidence that was not available at the time of trial, and I think that's what the appellant is hanging her hat on. Well, I didn't know I owned this property, so the court needs to address it because I'm just finding out. Well, that's not how it works. Newly discovered evidence is things that she could not have found out prior to the case. Well, this came to light from a deed that was provided to my office in discovery with her name on it. I mean, clearly this is something that she could have discovered with any effort before trial. No discovery was even requested from my client. This would clearly have been part of it, but it wasn't requested. And I've stated my facts. This was a case where I think the trial got delayed three separate times because her discovery had not been submitted to my office. No depositions were taken to discover this information. No investigation from the bank with the mortgage was done to find this information. That being said, the case law is very clear that if she could have easily discovered this information, she doesn't get to come back after she gets a bad ruling. She doesn't lie and try to change it because she's found something out. And I would submit at the end of the day, if she did not know about her name being on this mortgage, well, it gets us to the place we are now anyways because you can't change it because you found out afterwards. So my client still is going to be awarded the property and the debt. If she did know about it and it's just something she found out later, well, she's still stuck with exactly the situation she's in. My client has the property and the debt. In Mr. Hansen's argument, he says, basically the summary is, my client valued, Mr. Andrews valued the real estate at $130,000 and we should go with that because Ms. Andrews did not know she had an interest in the property. Well, because ignorance of whether or not she knew her name was on the property is not an excuse, it does not get her another bite of the apple, we could just as easily go with exactly what did happen. We accept her value and Judge Neubauer affirms that that's exactly what should happen. This is an abusive discretion review on a motion to reconsider, so unless any reasonable person could not accept what Judge Neubauer did, then this should be affirmed. So we're asking that as to the issue of the real estate, the court should affirm Judge Neubauer's decision that the real estate was addressed, the debt was addressed, and Mr. Andrews assumes the debt and the real estate. Now, there was also an issue of child support which was addressed and essentially 750, ILCS 5058, 3.8 states that if you have over 146 overnights per year, then you go with the shared custody schedule. If she has three days every week, she would have 156 overnights which would be over that, but it was uncontested that one weekend a month she's going out of town, Well, 12 times 3 is 36, and you subtract that from 156, and that gets us at 120, so it's not close like two or four days like Mr. Andrews said. I would submit we're way over that mark, and even though I would argue that the shared custody schedule should not apply at all, Judge Neubauer still deviated and reduced her support what it would be at the statutory level to give her a break, and in court, I would say that Mr. Hanson did affirm that his client was traveling because he told her to quit doing so, and this would not be an issue, and that's what a motion to modify child support is for. If she quits traveling, she could file a motion to modify child support, and then child support will be changed, so I would submit that the court should affirm Judge Neubauer's ruling on the child support issue. If the court does not have any more questions, I would. No more questions. Thank you. Thank you. Your Honors, a moment ago, counsel said that my client signed a mortgage, and I believe she did, but she also was the sole holder of the note, and that should be in the exhibits in the record, because she had the job. She's got the note now. In divorces, a non-owner signs mortgages quite often, so that argument should be considered with that in mind. Do you agree with what counsel said about she being absolved of the loan? Well, partially. The court offset half the loan against her award and directed him to have it, so she was absolved of the loan. The money was taken away by way of other assets and or pension monies. So yes and no. Yes, she's not. He's supposed to refinance the loan, but the court accepted the recapitulation that was prepared on the second day of trial and basically imposed half of that. That still cost her half the loan amount. Yes, Your Honor. At least that's what the recapitulation calculated. The other issue that was raised here is that if some statement was made about a deed that was provided in discovery with her name on it, I never saw that deed in anything that was before the court, and I only became aware of it because I was looking at it from the perspective that Your Honors might be looking at it, you know, what happened. And there was no deed tendered. And you asked a question about was there agreement with what the issues were. The only issues or whatever, and I'll read you that particular statement because I think in my brief I tried to pull those out because I had to read a lot to figure out what portions I thought were in support of my argument or contrary to my argument because I wanted to present, you know, what the issues were. It says... Sorry, I just found it before I got up here. Sorry I can't put my hands up. Very early, like the very first page or two of the transcript, there was an announcement made that the only issue, what the issues were. You know, there was no detail put in about that, and there was a stipulation in these exhibits which arguably tended what property was involved, and I guess my potential saving grace for my client having some equity given the facts would be that there was a stipulated exhibit, an admission, an admission by the respondent that there was real estate jointly owned worth $130,000. This has to be discounted because it wasn't addressed at trial for a number of reasons, some of which are equitable and some of which are just mistakes, but he admitted it, and admissions are binding on the parties. By the same token, the arguments made is my client newly discovered evidence. I'm submitting to you that, yes, you could argue it's newly submitted, but it was right there in the pleadings in the admissions contained with the financial affidavit. In other words, you know, I'm not going to say I believe Judge Neubauer put a tremendous disadvantage because these arguments weren't made. I submit to you that my client didn't make the arguments because she didn't know. Who wouldn't make an argument that they have a $130,000 piece of property if they believe that they did? Why would the opposing party not say anything and let it go? It's because it's financially beneficial to them, not wrong because we're in an adversary situation, but that's the purpose of a motion to reconsider, vacate, or to rehear. In this case, I believe the big issue is whether the stipulation is clear enough because it says you can review stipulations de novo to see whether or not you believe that the manifest way of evidence is that the issue was addressed. A waiver by my client? No testimony? No bystanders report? I can't argue with the witnesses because, but I submit to you she would have said something had she known at the time. There is no harm to come to him about it because it was gifted to her and him in the first instance and she's on that deed. And that only deed I ever saw was the one I submitted as a part of my motion to reconsider. There was no deed to tentative trial that I saw in any exhibit. No deed referenced in trial by any testimony. She, a grantee in the deed? Yes. She and her husband were jointly deeded this acreage upon which they, you know, quite frankly, this is not on the record too, but they needed that acreage to be able to, you know, quite frankly, finance this. Not part of the record, but that's why the loan was taken out so they had this extra land to pledge to get it. But that's not even about the issue.  There's jointly owned property worth $130,000. Just one more question. There was no outstanding loan on the motor home? On the double wide? No. Or was that included in the real estate? That was the only loan. In other words, the land was given to them at about the time they were going to put this home on there and it was given to the two of them and it's scheduled on the financial affidavit, which was stipulated in the record as jointly owned and worth $130,000. Thank you, Your Honor. Court will be recessed until 30. Thank you.